1
2
3
4
5
6
7
8
9

IN THE UNITED STATES DISTRICT COURT

10

FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12
13
14
15
16

| | | |
|---|---|---|
| MARCUS FAYETTE, | ) | No. C 12-4243 LHK (PR) |
| Petitioner, | ) | ORDER DENYING PETITION FOR |
| v. | ) | WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY |
| WARDEN RONALD BARNES, | ) | |
| Respondent. | ) | |

17    Petitioner, a state prisoner proceeding *pro se*, filed a petition for writ of habeas corpus

18  pursuant to 28 U.S.C. § 2254, challenging his 2009 state convictions for attempted murder and

19  related offenses.  Respondent was ordered to show cause why the petition should not be granted.

20  Respondent has filed an answer.  Petitioner has filed a traverse.  Having reviewed the briefs and

21  the underlying record, the court concludes that petitioner is not entitled to relief, and DENIES

22  the petition.

23                                    **PROCEDURAL HISTORY**

24    On July 21, 2009, petitioner was sentenced to a term of 30 years in state prison after a

25  jury found petitioner guilty of charges of attempted murder, assault with a semiautomatic

26  firearm, discharging a firearm with gross negligence, carrying a concealed firearm, and carrying

27  a loaded firearm.  The jury also found true allegations of firearm use and great bodily injury.  On

28  November 22, 2010, the California Court of Appeal affirmed the judgment.  On February 2,

1   2011, the California Supreme Court denied review.  On May 16, 2012, the California Supreme

2   Court denied petitioner's petition for writ of habeas corpus.  On August 10, 2012, petitioner filed

3   the underlying federal habeas petition.

4   **FACTUAL BACKGROUND**[1]

5   On July 4, 2007, Selvin Flores, along with Roberto Henriquez, Raul Bueso and
    Enrique Gonzales went to the Embarcadero near the Ferry Building to watch the
6   fireworks.  Around 10:30 p.m., Flores and his friends noticed a group of five or
    six persons who were looking at them. There were two women, one younger
7   than the other; an African-American man and a Latino youth (14 to 15 years
    old); and a Latino man (20 to 21 years old).

8
    People in the group asked Flores and his friends where they were "from," and
9   what did they "claim."  Flores testified they said they were Norteños, [FN2] and
    only Norteños could be there.  Bueso stated that "the leader of the group that
10  was looking at us" said things like, "North lives.  North rules."  Henriquez
    testified that his group indicated "we weren't from any side" and "they told us if
11  you are nothing then get out of here."

12          FN2.  The Norteños is a criminal street gang that has consistently been
            in the Mission District of San Francisco for the past 10 years.
13

14  Flores and his friends moved away, but shortly thereafter the two groups
    crossed paths again.  Appellant told them, in English, "it is better you walk
15  away" but Henriquez asked why, noting "it is a public place and this is . . . a
    holiday."  Bueso testified "they felt like we had insulted them."  Appellant asked
16  the younger woman to give him the gun.  She opened her bag and appellant
    pulled out a gun.  He pulled back the top slide, pointed the gun at Flores and
17  began shooting from a distance of about five feet.  Appellant shot Flores four
    times: in his left leg, shoulder, under the armpit and his right leg. [FN3.]  Flores
18  was very afraid and thought he was going to die.

19          FN3. The hospital emergency room physician who treated Flores
            testified that Flores had been shot several times and had some fractures
20          and wounds, specifically two wounds in and around the right clavicle,
            two wounds on the left lower leg near the fibula and two wounds on his
21          right thigh.  Each wound was about a half a centimeter in size.  They
            were not life threatening.

22  Henriquez thought the gun might be fake and went at appellant with his right
    hand raised in front of him.  Appellant shot him in the forehead.  It felt like his
23  forehead had exploded.

24  Gonzales had a five- to six-inch graze wound on his upper back.

25  Flores and his friends had no weapons, and no one else in appellant's group was
    seen with a weapon.  Police officers recovered five .380-caliber shell casings
26  from the crime scene, all fired from the same semiautomatic weapon.

27

28
    _____

    [1]   The following facts are taken from the California Court of Appeal's opinion.

San Francisco Police Sergeant Dion McDonnell, assigned to the gang task force, was the lead investigator.  He put together two photographic lineups and showed them to the three shooting victims and Bueso.  After receiving the results of the lineup, Sergeant McDonnell went "looking for" appellant and ultimately arrested him on July 10, 2007.  Flores, Henriquez and Bueso identified appellant at trial as the shooter.

Police recovered a loaded .25-caliber semiautomatic firearm from appellant's jeans pocket at the time of his arrest.  Two red bandanas [FN4] were found in his bedroom.  A year later a sheriff's deputy found a gang kite [FN5] during a random search of appellant's cell.

> FN4. The Norteños "claim" the color red; it is a sign for the gang.

> FN5. A gang kite is a small scroll with miniature writing.  Kites are a form of jail communication for the Norteños gang.

A sheriff's department deputy recorded appellant's jailhouse telephone calls. CD's of the calls were played for the jury, and transcripts were provided.  His brother, James Fayette, a former gang member, talked about the fact that someone must have snitched and told appellant: "It doesn't mean nothing, this gang shit.  It's over.  Why you think I'm trying to be smart, blood?  I'm done. Nigga, I know better, blood.  It's only getting worse.  Now it's too late.  And I was trying to get you before it's too late, but now it is too late."  Further, he said: "When they charge you with something, bro, that means they pretty much got you.  You know?  If they got something good enough to charge you, they got evidence."  Appellant replied: "I know.  And not just fucking one, but two, fucking three of them, blood."

Sergeant McDonnell testified that appellant associated with Norteño gang members, and opined he was a Norteño based on his activity during the incident in question, as well as the prior contacts and incidents.

**Defense**:  Appellant's aunt, Mary Norris, testified that on July 4, 2007, she went to see the fireworks at the Embarcadero with appellant, his girlfriend Nancy, a woman named Mareta (20 to 22 years of age), and Mareta's African-American boyfriend.  She noticed a group of three or four young men looking at them. After the fireworks, they all began to leave but she got lost in the crowd.  She heard popping noises, but thought it was fireworks.  She did not see appellant hit anyone or pull out a gun.

Mareta Dean testified that she went with her boyfriend, appellant and his girlfriend Nancy, and appellant's aunt to the Embarcadero that night.  A group of five or six "Mexican guys" were arguing with appellant's aunt, yelling face to face.  Appellant tried to stop them, using calming words.  They left but stared at appellant and his friends, and gave "mean faces."  Crossing paths with the group again, "they started talking mess" to appellant and someone threw a bottle at him.  One of them charged at appellant, who put his hands up, then backed off; he had a nick on his face.  Dean also saw a group of "Black guys walking by" who "got in it."  When one "of the Mexican guys punched a Black guy," he reached toward the middle of his torso, and then she heard shots.

Kathleen Grcevich also attended the fireworks that night.  Walking back to the car, she saw a confrontation in which a Hispanic male punched an African-American male, who landed on the ground, pulled out a little silver revolver

1

2
with a cylinder, and shot at the Hispanic male.  However, she did not see
gunfire or hear gunshots; someone said "it is fake."  Grcevich did not see
appellant at the incident.

3
*People v. Fayette*, No. A125602, 2010 WL 4729460, at *1-*3 (Cal. App. Nov. 22, 2010).

4
**STANDARD OF REVIEW**

5
This court may entertain a petition for writ of habeas corpus "in behalf of a person in

6
custody pursuant to the judgment of a State court only on the ground that he is in custody in

7
violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The

8
petition may not be granted with respect to any claim that was adjudicated on the merits in state

9
court unless the state court's adjudication of the claim: "(1) resulted in a decision that was

10
contrary to, or involved an unreasonable application of, clearly established Federal law, as

11
determined by the Supreme Court of the United States; or (2) resulted in a decision that was

12
based on an unreasonable determination of the facts in light of the evidence presented in the

13
State court proceeding."  28 U.S.C. § 2254(d).

14
"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state

15
court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

16
law or if the state court decides a case differently than [the] Court has on a set of materially

17
indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  "Under the

18
'reasonable application clause,' a federal habeas court may grant the writ if the state court

19
identifies the correct governing legal principle from [the] Court's decisions but unreasonably

20
applies that principle to the facts of the prisoner's case."  *Id.* at 413.

21
"[A] federal habeas court may not issue the writ simply because the court concludes in its

22
independent judgment that the relevant state-court decision applied clearly established federal

23
law erroneously or incorrectly.  Rather, the application must also be unreasonable."  *Id.* at 411.

24
A federal habeas court making the "unreasonable application" inquiry should ask whether the

25
state court's application of clearly established federal law was "objectively unreasonable."  *Id.* at

26
409.

27
The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is

28
in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court

1   decision. *Id.* at 412. Clearly established federal law is defined as "the governing legal principle

2   or principles set forth by the Supreme Court." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

3   Circuit law may be "persuasive authority" for purposes of determining whether a state court

4   decision is an unreasonable application of Supreme Court precedent, however, only the Supreme

5   Court's holdings are binding on the state courts, and only those holdings need be "reasonably"

6   applied. *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

**DISCUSSION**

7

8       Petitioner claims that: (1) there was insufficient evidence to convict petitioner of

9   attempted murder; (2) the jury improperly rendered legally inconsistent verdicts; (3) the trial

10  court's failure to sever trial resulted in the denial of due process; (4) the jury failed to return a

11  unanimous verdict, and the trial court erred in failing to give CALCRIM No. 3500 (unanimity

12  instruction); (5) the trial court erred in instructing the jury; and (6) counsel rendered ineffective

13  assistance.

14  A.   Sufficiency of the evidence

15      Petitioner asserts that there was insufficient evidence to support a conviction of the

16  attempted murder of Flores because there was no evidence to establish that petitioner acted with

17  the intent to kill. While five shell casings were found at the scene of the crime, petitioner points

18  out that even assuming that Flores was shot four times, the jury verdict could have been based on

19  the fifth shot that did not actually strike Flores. Further, petitioner states that the emergency

20  room doctor who testified at trial could not conclusively answer how many times Flores was shot

21  because one bullet could cause multiple wounds, depending on its angle and the number of

22  entrance and exit wounds on the victim.

23      The California Court of Appeal rejected this claim.

24      These concerns are of no moment. The crime of attempted murder does not
        require that the wounds be life threatening. Rejection of the criminal street
25      gang allegations, which require a number of very specific findings, does not
        negate the fact that gang-related taunts and claims of territory from appellant
26      clouded the interaction between the two groups of young men. Finally,
        appellant's summation of the evidence, notably that the shooting "occurred
27      spontaneously" because of the testosterone-infused interaction of the groups,
        ignores key facts. After telling Flores and his friends to walk away, appellant
28      apparently became insulted because Henriquez retorted that it was a public

1
2
3
4
5

place.  He then directed his girlfriend to give him the gun, and, when she opened her purse, he pulled it out, pointed the gun at Flores and started firing. Appellant shot Flores four times at close range; he suffered a number of fractures and wounds.  There was sufficient evidence of intent to kill.  The act of firing a weapon ""toward a victim at a close, but not point blank, range 'in a manner that could have inflicted a mortal wound had the bullet been on target is sufficient to support an inference of intent to kill. . . .' [Citation.]" [Citations.]' [Citation.]"  (*People v. Perez*, *supra*, 50 Cal.4th at p. 230.)

*Fayette*, 2010 WL 4729460, at *3.

6
7
8
9
10

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim, which, if proven, entitles him to federal habeas relief.  *See Jackson v. Virginia*, 443

11
12
13

U.S.321, 324 (1979).

14
15
16
17
18
19
20
21

Sufficiency claims on federal habeas review are subject to a "twice-deferential standard." *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (per curiam).  First, relief must be denied if, viewing the evidence in the light most favorable to the prosecution, there was evidence upon which "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* (quoting *Jackson*, 443 U.S. at 324).  Second, a state court decision denying a sufficiency challenge may not be overturned on federal habeas unless the decision was "objectively unreasonable."  *Id.* (quoting *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011)).  Finally, the *Jackson* standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.  *Jackson*, 443 U.S. at 324 n.16.

22
23
24
25
26

As the California Court of Appeal found, petitioner's four pointed shots at a distance of five feet was done "in a manner that could have inflicted a mortal wound" was sufficient under state law to support the element of an intent to kill.  The record supports that a jury could have found all the essential elements of attempted murder, and the state court's denial was not objectively unreasonable.

27
28

Accordingly, petitioner is not entitled to habeas relief on this claim.

1    B.    <u>Legally inconsistent verdicts</u>

2          Petitioner argues that his convictions for attempted premeditated murder, assault with a

3    semi-automatic firearm, and discharging a firearm in a grossly negligent manner defined

4    behaviors that were mutually exclusive in their commission and arose out of one set of facts.

5    Thus, claims petitioner, he should be convicted only of the lesser crime.

6          Although the convictions arose out of one set of facts, each of these convictions relied

7    upon distinct elements.  In addition, the court cannot discern why petitioner believes his

8    convictions on these crimes are inconsistent.  Moreover, to the extent petitioner alleges that he

9    should only be convicted of the "lesser crime," the court notes that the three above-referenced

10   convictions are not lesser-included offenses, nor lower degrees, of each other and thus

11   petitioner's citation to California Penal Code § 1097 is inapplicable.

12         Even if the verdicts had been inconsistent, petitioner is not entitled to relief under state or

13   federal law.  Inconsistent verdicts are not impermissible under California law.  *See People v.*

14   *Lewis*, 25 Cal. 4th 610, 656 (Cal. 2001) ("It is well settled that, as a general rule, inherently

15   inconsistent verdicts are allowed to stand.").  There also is no federal due process right to be free

16   of an inconsistent verdict.  The Supreme Court has determined that inconsistent verdicts do not

17   make a trial fundamentally unfair.  *See Standefer v. United States*, 447 U.S. 10, 25-26 (1980).

18         Thus, petitioner cannot show that the state court's rejection of his claim was contrary to

19   or an unreasonable application of any clearly established law from the Supreme Court.

20   C.    <u>Severance</u>

21         Petitioner alleges that the trial court should have severed Counts 8 and 9 – carrying a

22   concealed firearm and carrying a loaded firearm – from the other counts.  Specifically, petitioner

23   argues that Counts 8 and 9 arose from an incident on July 10, 2007, six days after the shooting,

24   and that the possession charges were not cross-admissible as to the other counts.

25         The California Court of Appeal rejected this claim.  Based on state law, "An abuse of

26   discretion for refusal to sever may be found, among other factors, where: (1) evidence on the

27   charges to be tried jointly would not be cross-admissible in independent trials; (2) certain

28   charges are unusually likely to inflame jurors against the defendant; and (3) a weak case is joined

with a strong case or another weak case, such that a spillover effect of aggregate evidence on several charges might well change the outcome on some or all charges." *Fayette*, 2010 WL 4729460, at \*5.  The state appellate court went on to say that none of the counts were weak.  It explained that three eyewitnesses identified petitioner as the shooter for the July 4 incident.  As for the July 10 incident, petitioner had no defense to the accusation that he was carrying a concealed and loaded firearm when he was arrested.  *Id.* at \*6.  The state appellate court also rejected the notion that the charges were too inflammatory to try together.  It reasoned, "That appellant was carrying a concealed, loaded weapon nearly a week after the Fourth of July incident would not tend to uniquely inflame jurors against appellant as a person with respect to the crime of shooting at three persons at close range in a crowded plaza, crimes that certainly were as egregious as the carrying charges.  Moreover, the jury convicted appellant on counts 8 and 9 because he was caught with a loaded concealed weapon, not because of emotional bias stemming from his earlier conduct." *Id.*

A joinder, or denial of severance, of co-defendants or counts may prejudice a defendant sufficiently to render his trial fundamentally unfair in violation of due process.  *Grisby v. Blodgett*, 130 F.3d 365, 370 (9th Cir. 1997).  To prevail on such a claim, a petitioner must demonstrate that the state court's joinder or denial of his severance motion resulted in prejudice great enough to render his trial fundamentally unfair.  *Id.*  In addition, the impermissible joinder must have had a substantial and injurious effect or influence in determining the jury's verdict.  *Sandoval v. Calderon*, 241 F.3d 765, 772 (9th Cir. 2000).  There is a "high risk of undue prejudice whenever . . . joinder of counts allows evidence of other crimes to be introduced in a trial of charges with respect to which the evidence would otherwise be inadmissible." *United States v. Lewis*, 787 F.2d 1318, 1322 (9th Cir. 1986).  This risk is especially great when the prosecutor encourages the jury to consider the two sets of charges in concert, e.g., as reflecting a modus operandi even though the evidence is not cross admissible, and when the evidence of one crime is substantially weaker than the evidence of the other crime.  *Bean v. Calderon*, 163 F.3d 1073, 1084-85 (9th Cir. 1998).  But joinder generally does not result in prejudice if the evidence of each crime is simple and distinct (even if the evidence is not cross admissible), and the jury is

1    properly instructed so that it may compartmentalize the evidence. *Id.* at 1085-86.

2        Petitioner has failed to show that the consolidation of Counts 8 and 9 with the other

3    charges resulted in prejudice great enough to render his trial fundamentally unfair. Petitioner

4    argues here, as he did in his state court appeal, that the testimonies about the shootings and that

5    the prosecutor's comment that petitioner was the type of person who always carried a gun were

6    inflammatory and prejudicial. However, regardless of whether the evidence was not cross

7    admissible, that factor alone does not render the trial fundamentally unfair by itself. As the state

8    court noted, the evidence of the crimes on July 4 were distinct from the evidence of the crimes

9    on July 10, and the evidence regarding the July 10 crimes were not necessarily stronger or

10   weaker than the others. In addition, the jury was not able to reach a verdict on Counts 2, 3, and

11   6, which tends to demonstrate that the jury was able to compartmentalize the evidence and thus

12   the risk of influence is minimized. *See Park v. California*, 202 F.3d 1146, 1149-50 (9th Cir.

13   2000).

14       Accordingly, the state court's denial of this claim was not contrary to, or an unreasonable

15   application of, clearly established Supreme Court law.

16   D.    Jury unanimity

17       Petitioner alleges that the trial court should have required the prosecution to specify

18   "which shot" it was relying upon to support the attempted murder charged. Petitioner further

19   argues that this error was compounded by not instructing the jury with CALCRIM No. 3500

20   regarding unanimity.

21       The state appellate court rejected this claim.

22       A jury verdict in a criminal case must be unanimous. Further, "the jury must
         agree unanimously the defendant is guilty of a specific crime." (*People v.*
23       *Russo* (2001) 25 Cal.4th 1124, 1132.) Thus, if the evidence suggests that there
         is more than one discrete crime, "the prosecution must elect among the crimes
24       or the court must require the jury to agree on the same criminal act." (*Ibid.*)

25       Although the jury must agree on a particular crime that the defendant
         committed, "'"unanimity as to exactly how the crime was committed is not
26       required."'" (*People v. Datt* (2010) 185 Cal. App. 4th 942, 950.) Thus, no
         unanimity instruction is needed "'"where multiple theories or acts may form the
27       basis of a guilty verdict on one discrete criminal event."[Citation.]'" (*Ibid.*) In
         deciding whether to instruct on unanimity, the trial court must assess whether
28       there is a risk the jury might divide on two discrete crimes, while not agreeing

1     on any particular crime, or whether the evidence simply presents the possibility
      the jury might "divide, or be uncertain, as to the exact way the defendant is
2     guilty of a single discrete crime." (*People v. Russo*, *supra*, 25 Cal.4th at p.
      1135.)  Furthermore, multiple acts in a continuous course of conduct constitute
3     one discrete criminal event. (*People v. Flores* (2007) 157 Cal. App. 4th 216,
      222.)  Thus, unanimity instructions need not be given when the acts in question
4     "'are so closely connected as to form part of one transaction' and 'the defendant
      offers essentially the same defense to each of the acts, and there is no
5     reasonable basis for the jury to distinguish between them.'[Citation.]" (*People
      v. Ervine* (2009) 47 Cal.4th 745, 788; *People v. Datt*, *supra*, 185 Cal. App. 4th
6     at p. 951.)

7     Here the attempted murder of Flores was accomplished by the rapid firing of
      four shots at close range to Flores's legs, shoulder and armpit.  The criminal act
8     in question was the single discrete crime of attempted murder; unanimity as to
      the exact way in which this crime was committed – i.e., agreement on which
9     specific bullets struck Flores – was not required. (*People v. Russo*, *supra*, 25
      Cal.4th at p. 1135; *People v. Datt*, *supra*, 185 Cal. App. 4th at p. 950.)
10    Moreover, the gunshots were so closely connected in time as to form part of a
      single transaction, and appellant did not offer differing defenses as to the
11    various shots fired.  Indeed, appellant's only defense was that he was not the
      shooter.  Further, the evidence supporting each shot was the same and there was
12    nothing in the record to demonstrate that he fired some but not all of the shots.
      In addition, and contrary to appellant's assertion, the continuous course of
13    conduct exception is not confined to long term child abuse or molestation. (*See
      People v. Ervine*, *supra*, 47 Cal.4th at p. 788 [various shots fired at police
14    officers]; *People v. Datt*, *supra*, 185 Cal. App. 4th at p. 951 [18-minute pursuit
      involving various Vehicle Code violations]; *People v. Flores*, *supra*, 157 Cal.
15    App. 4th at pp. 222-223 [witnesses heard gunshots without significant delay
      between individual discharges and location of bullet casings suggested
16    defendant repeatedly fired gun while standing in one location].)

17    *Fayette*, 2010 WL 4729460, at *4.

18         Petitioner has no right to a unanimity instruction as a matter of federal constitutional law.

19    Criminal defendants in state court have no federal constitutional right to a unanimous jury

20    verdict.  *See Schad v. Arizona*, 501 U.S. 624, 631-32 (1991) (rule that jurors are not required to

21    agree upon single means of commission of crime applies equally to the contention that they must

22    agree on one of alternative means of satisfying mental state element of crime); *Apodaca v.*

23    *Oregon*, 406 U.S. 404, 410-12 (1972) (rejecting Sixth Amendment right to jury trial challenge to

24    10-2 state jury verdict); *cf. McKoy v. North Carolina*, 494 U.S. 433, 449 (1990) (Blackman, J,

25    concurring) ("different jurors may be persuaded by different pieces of evidence, even when they

26    agree upon the bottom line. . . .  [T]here is no general requirement that the jury reach agreement

27    on the preliminary factual issues which underlie the verdict").  In the absence of any holding

28    from the Supreme Court that a federal constitutional right to a unanimous verdict exists, the state

1    appellate court's rejection of petitioner's claim cannot be said to be contrary to or an

2    unreasonable application of any clearly established law from the Supreme Court.

3          Moreover, as the state appellate court noted, the unanimity instruction is needed when

4    there is more than one discrete crime, as opposed to the underlying situation where there is one

5    discrete crime. Here, the act of shooting four shots at close range to Flores was a single, discrete

6    crime of attempted murder. The four shots so closely connected in time formed one single

7    transaction, and the defense offered one single defense to all four shots. Petitioner's only

8    defense was that he was not the shooter. Petitioner did not offer differing defenses as to various

9    shots fired. Accordingly, the trial court did not err in omitting a unanimity instruction.

10         Thus, the state court's denial of this claim was not contrary to, or an unreasonable

11   application of, clearly established Supreme Court law.

12   E.    Trial court's jury instructions

13         Petitioner claims that the trial court erred by failing to instruct the jury on "the effect of a

14   reasonable doubt" with regard to the lesser-included offenses; to instruct the jury on petitioner's

15   defenses; and to give the jury a pinpoint instruction regarding the "crux" of petitioner's case.

16         A state trial court's refusal to give an instruction does not alone raise a cognizable ground

17   in federal habeas corpus proceedings. *See Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir.

18   1988). The error must so infect the trial that the defendant was deprived of the fair trial

19   guaranteed by the Fourteenth Amendment. *See id.* Due process requires that "'criminal

20   defendants be afforded a meaningful opportunity to present a complete defense.'" *Clark v.

21   Brown*, 450 F.3d 898, 904 (9th Cir. 2006) (quoting *California v. Trombetta*, 467 U.S. 479, 485

22   (1984)). Therefore, a criminal defendant is entitled to adequate instructions on the defense

23   theory of the case. *See Conde v. Henry*, 198 F.3d 734, 739 (9th Cir. 2000). The omission of an

24   instruction is less likely to be prejudicial than a misstatement of the law. *See Walker v. Endell*,

25   850 F.2d 470, 475-76 (9th Cir. 1987).

26         Here, petitioner does not specifically point out what instruction or instructions were

27   requested that the trial court refused to give. The trial court instructed the jury on the definition

28   of reasonable doubt and on lesser included offenses. The jury was specifically instructed to find

1   petitioner guilty of the lesser included offenses only if it agreed that there was reasonable doubt

2   that petitioner was guilty of the greater offense, and it agreed that there was no reasonable doubt

3   that petitioner was guilty of the lesser crime.  As respondent notes, petitioner's defense to the

4   attempted murder charge was that petitioner was not the shooter.  Petitioner has not

5   demonstrated what instruction should have been given, or how the omission of such an

6   instruction deprived petitioner of a fair trial.  Habeas relief cannot be granted on a vague and

7   conclusory allegation.  *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory

8   allegations which are not supported by a statement of specific facts do not warrant habeas

9   relief.").

10   F.     Ineffective assistance of trial counsel

11          Petitioner raises several claims of ineffective assistance of trial counsel.  In order to

12   prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two

13   things.  First, he must establish that counsel's performance was deficient, i.e., that it fell below

14   an "objective standard of reasonableness" under prevailing professional norms.  *Strickland v.*

15   *Washington*, 466 U.S. 668, 687-88 (1984).  Second, he must establish that he was prejudiced by

16   counsel's deficient performance, i.e., that "there is a reasonable probability that, but for

17   counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at

18   694.  A reasonable probability is a probability sufficient to undermine confidence in the

19   outcome.  *Id.*

20          First, petitioner claims that counsel failed to require the prosecutor to elect which of the

21   shots it was relying upon to support the attempted murder charge in Count 1, and to require a

22   unanimity instruction.  Second, petitioner argues that trial counsel should have requested "an

23   instruction relating to particular facts to any legal issue" and requested "pinpoint instructions."

24   However, the court has already analyzed and rejected the underlying substantive claims of

25   unanimity and the omission of instructions.  Thus, petitioner necessarily fails to establish

26   prejudice.

27          Third, petitioner alleges that counsel should have established how many times Flores was

28   actually shot and provided an expert to challenge the number of gun shots.  Petitioner does not

explain how or why this information would have been helpful or how he was prejudiced by counsel's omission.  Expert testimony is necessary when lay persons are unable to make an informed judgment without the benefit of such testimony.  *See Caro v. Calderon*, 165 F.3d 1223, 1227 (9th Cir. 1999).  Here, the evidence was clear that petitioner shot Flores several times from close range.  Five .380-caliber shell casings originating from the same weapon were obtained from the crime scene.  Medical evidence was admitted that Flores suffered several fractures, two wounds in and around his right clavicle, two wounds on the left lower leg, two wounds on his right thigh, and a wound under his arm.  Petitioner does not show why an expert was needed to assist the jury in making an informed judgment without an expert's assistance.  Moreover, petitioner does not explain how specifying the exact number of shots that struck Flores would have affected the verdict.  Based on the evidence, counsel did not render deficient performance, nor was petitioner prejudiced from counsel's failure to establish how many times Flores was actually shot or provide an expert to confirm that number.

Fourth, petitioner claims that trial counsel should have objected to the prosecutor's comment during closing argument that: (1) petitioner "talks about how he is always carrying a gun;" (2) when the prosecutor stated that petitioner continued to fire at Flores after Flores was hit in the back of his legs and was trying to get away; and (3) when the prosecution suggested that defense witness Kathleen Grcevich did not witness the underlying crime.  Here, petitioner fails to demonstrate that he was prejudiced by trial counsel's failure to object during these three instances.  Even if trial counsel should have objected to these remarks, the prosecutor's comments were based on reasonable inferences at trial, and the jury was instructed that counsel's arguments are not evidence.  Moreover, counsel's failure to object, in light of the overwhelming evidence of guilt presented at trial did not prejudice petitioner so as to deprive him of a fair trial.

And, finally, petitioner argues that trial counsel should have conducted pretrial interviews with the prosecution's witnesses.  However, the duty to investigate and prepare a defense does not require that every conceivable witness be interviewed.  *Hendricks v. Calderon*, 70 F.3d 1032, 1040 (9th Cir. 1995).  A defendant's mere speculation that a witness might have given helpful information if interviewed is not enough to establish ineffective assistance.  *See Bragg v.*

1 | *Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). To establish

2 | prejudice caused by the failure to call a witness, a petitioner must show that the witness was

3 | likely to have been available to testify, that the witness would have given the proffered

4 | testimony, and that the witnesses' testimony created a reasonable probability that the jury would

5 | have reached a verdict more favorable to the petitioner. *Alcala v. Woodford*, 334 F.3d 862, 872-

6 | 73 (9th Cir. 2003). Petitioner proffers no argument as to how pretrial interviews would have

7 | resulted in a reasonable probability that the result of trial would have been different.

8 |     Accordingly, the state court's denial of this claim was not contrary to, or an unreasonable

9 | application of, clearly established Supreme Court law.

10 | **CONCLUSION**

11 |     The petition for writ of habeas corpus is DENIED. The federal rules governing habeas

12 | cases brought by state prisoners require a district court that denies a habeas petition to grant or

13 | deny a certificate of appealability ("COA") in its ruling. *See* Rule 11(a), Rules Governing §

14 | 2254 Cases, 28 U.S.C. foll. § 2254. Petitioner has not shown "that jurists of reason would find it

15 | debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack*

16 | *v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a COA is DENIED.

17 |     The Clerk is instructed to enter judgment in favor of respondent and close the file.

18 |     IT IS SO ORDERED.

19 | DATED: _2/18/2015_

20 | LUCY H. KOH
United States District Judge

21

22

23

24

25

26

27

28